**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JULIE CHORBAJIAN,

Plaintiff,

v.

ROCKET MORTGAGE, LLC,

Defendant.

## COMPLAINT

## INTRODUCTION

1. Plaintiff Julie Chorbajian brings this action to secure redress for improper conduct in administering and servicing her residential mortgage loan.

2. Plaintiff alleges violation of the Real Estate Settlement Procedures Act, 12 U.S.C. 2605 ("RESPA"), and Regulation X, 12 C.F.R. part 1024, breach of fiduciary duty, breach of contract, and violation of the Illinois Consumer Fraud Act, and seeks restitution.

## JURISDICTION AND VENUE

3. This Court has jurisdiction under 12 U.S.C. §2614 (RESPA), 28 U.S.C. §1331 (general federal question), 28 U.S.C. §1337 (interstate commerce), and 28 U.S.C. §1367 (supplemental jurisdiction).

4. Venue in this District is proper because the Plaintiff resides here and the property securing the loan is located here.

## PARTIES

5. Plaintiff is a resident of Buffalo Grove, Illinois. She resides in a single-family home which she owns.

6. Defendant Rocket Mortgage, LLC ("Rocket") is a Michigan limited liability company with its principal address at 1050 Woodward Ave., Detroit, MI 48226. It does business in Illinois. Its registered agent and office is C T Corporation System, 208 S. La Salle St., Suite 814,

Chicago, IL 60604-1101. It is engaged in the business of servicing residential mortgage loans. Rocket Mortgage's servicing portfolio is approximately $2.1 trillion in unpaid principal balance covering about 10 million loans. It is one of the largest residential mortgage servicers in the United States. It is the successor to Nationstar Mortgage, LLC d/b/a Mr. Cooper. It is a licensee (MB.0004127) under the Illinois Residential Mortgage License Act.

**FACTS**

7. Plaintiff's home mortgage loan was made by Nationstar Mortgage, LLC d/b/a Mr. Cooper and serviced by Nationstar until Nationstar was acquired by Rocket effective October 1, 2025. It was thereafter serviced by Rocket. On information and belief, Rocket was also the owner of the loan. A copy of the mortgage is in Appendix A.

8. Rocket collected money in escrow for Plaintiff's taxes, and was supposed to be paying the taxes using those funds.

9. Rocket failed to pay the tax authorities for the second payment of 2024, due December 2025, in the amount of $4,591.60.

10. Plaintiff learned the taxes were not paid when she was preparing her income tax returns and realized the number on the tax form received from Rocket was too low.

11. Plaintiff began calling Rocket for months, from February through May, 2026 in an attempt to get Rocket to remedy the situation. Instead of correcting the problem, Rocket gave Plaintiff the run-around. Various Rocket representatives said they would "escalate" the issue to someone higher up to fix the problems.

12. Plaintiff's March/April 2026 mortgage statement deducted money that appeared to be for the December tax installment, but Cook County continued to report that the taxes had not been paid. Interest and penalties were accruing on the unpaid taxes and the fact that they were unpaid was a public record that was embarrassing to Plaintiff.

13. If any payments were actually made at that time for the December taxes, Rocket made them improperly so that they were not attributed to Plaintiff's property. On information and

belief, Rocket used Plaintiff's money to pay taxes on a parcel not connected with Plaintiff.

14. Just prior to this situation arising, Plaintiff had been dealing with serious medical problems experienced by her husband, and this just added to her stress.

15. After months of being unable to get Rocket mortgage to pay the taxes, Plaintiff decided to refinance her mortgage so that Rocket would no longer be her mortgage servicer. Plaintiff had to pay closing costs in order to do so, incurring additional financial harm.

16. In order to get her refinanced loan approved, Ms. Chorbajian paid the taxes herself, plus penalties and interest, on or about April 25, 2026, in the amount of $4,829.77.

17. Rocket added over $2,000 to its payoff quote for "escrow advances."

18. Rocket did not issue any refunds to Plaintiff after the refinance. It also appears that Rocket did not adjust the payoff balance to reflect the fact that one of the escrow deductions it made in March was not received by Cook County for Plaintiff's property, resulting in additional losses to Plaintiff.

19. Unable to get Rocket to resolve the problem on her own, Plaintiff then contacted counsel.

20. On June 25, 2026, Ms. Chorbajian, through counsel, sent three copies of a qualified written request seeking restitution of the $4,829.77 plus interest and an accounting. (Appendix B) One copy was faxed to Rocket and two copies were sent by certified mail to Rocket and an address used by both Mr. Cooper and Rocket to receive qualified written requests.

21. The mailed copies were delivered on June 29 and June 30, 2026. (Appendix C)

22. Rocket has neither acknowledged nor responded to the requests.

23. Plaintiff was damaged, in that she lost $4,829.77 plus interest, possibly lost other amounts, spent time and money correcting Rocket's error, and incurred aggravation and distress.

## COUNT I – RESPA

24. Plaintiff incorporates paragraphs 1-23.

25. RESPA, 12 U.S.C. §2605(e), provides:

(e) Duty of loan servicer to respond to borrower inquiries

(1) Notice of receipt of inquiry

(A) In general

If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

(B) Qualified written request

For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—

(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

(2) Action with respect to inquiry

Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall—

(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

(3) Protection of credit rating

During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 1681a of title 15). . . .

26. RESPA, 12 U.S.C. §2605(f), provides:

(f) Damages and costs

Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:

(1) Individuals

In the case of any action by an individual, an amount equal to the sum of—

(A) any actual damages to the borrower as a result of the failure; and

(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000. . . .

(3) Costs

In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.

27. The obligation to take corrective action includes the provision of any refund or credit that is necessary. "This statutory mechanism makes past errors current by requiring servicers to fix errors they find upon reasonable investigation, including by issuing refunds as necessary." *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016).

28. Regulation X implementing RESPA, 12 C.F.R. §1024.35, "Error resolution procedures," states:

> (a) Notice of error. A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred. A notice on a payment coupon or other payment form supplied by the servicer need not be treated by the servicer as a notice of error. A qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section, and a servicer must comply with all requirements applicable to a notice of error with respect to such qualified written request.
>
> (b) Scope of error resolution. For purposes of this section, the term "error" refers to the following categories of covered errors:
>
> (1) Failure to accept a payment that conforms to the servicer's written requirements for the borrower to follow in making payments.
>
> (2) Failure to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law.
>
> (3) Failure to credit a payment to a borrower's mortgage loan account as of the date of receipt in violation of 12 CFR 1026.36(c)(1).
>
> (4) Failure to pay taxes, insurance premiums, or other charges, including charges that the borrower and servicer have voluntarily agreed that the servicer should collect and pay, in a timely manner as required by § 1024.34(a), or to refund an escrow account balance as required by § 1024.34(b).
>
> (5) Imposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower.
>
> (6) Failure to provide an accurate payoff balance amount upon a borrower's request in violation of section 12 CFR 1026.36(c)(3).
>
> (7) Failure to provide accurate information to a borrower regarding loss mitigation options and foreclosure, as required by § 1024.39.
>
> (8) Failure to transfer accurately and timely information relating to the servicing of a borrower's mortgage loan account to a transferee servicer.
>
> (9) Making the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process in violation of § 1024.41(f) or (j).
>
> (10) Moving for foreclosure judgment or order of sale, or conducting a foreclosure sale in violation of § 1024.41(g) or (j).
>
> (11) Any other error relating to the servicing of a borrower's mortgage loan. . . .

(e) Response to notice of error.

(1) Investigation and response requirements

(i) In general. Except as provided in paragraphs (f) and (g) of this section, a servicer must respond to a notice of error by either:

(A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

(ii) Different or additional error. If during a reasonable investigation of a notice of error, a servicer concludes that errors occurred other than, or in addition to, the error or errors alleged by the borrower, the servicer shall correct all such additional errors and provide the borrower with a written notification that describes the errors the servicer identified, the action taken to correct the errors, the effective date of the correction, and contact information, including a telephone number, for further assistance. . . .

29. Rocket SPS violated RESPA, 12 U.S.C. §2605, by failing to acknowledge or respond to Plaintiff's qualified written requests.

30. Rocket Mortgage has repeatedly been accused of failing to acknowledge or properly respond to qualified written requests, including requests relating to failure to properly pay escrow disbursements.. *E.g., Akkus v. Rocket Mortg., LLC,* 22cv2933, 2026 U.S. Dist. LEXIS 117409, 2026 WL 1500883 (D.Md., May 27, 2026); *Lewis v. Rocket Mortgage, LLC,* 5:26cv187 (W.D.Va., filed Oct. 30, 2026); *Bowen-Cherry v. Rocket Mortgage*, 1:26cv290 (W.D.Pa., filed Oct. 15, 2026); *Schore v. Rocket Mortgage*, 8:26cv2630 (M.D.Fla., filed Sept. 9, 2026). The Consumer Financial Protection Bureau and Better Business Bureau have numerous such complaints.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and

against Rocket Mortgage, LLC for:

i. Compensatory damages;

ii. Statutory damages;

iii. Attorney's fees, litigation expenses and costs of suit;

iv. Such other or further relief as the Court deems proper.

**COUNT II – BREACH OF FIDUCIARY DUTY**

31. Plaintiff incorporates paragraphs 1-23 and 30.

32. Rocket had a fiduciary obligation to safeguard and properly disburse funds in the escrow account it was maintaining for Plaintiff.

33. Rocket's conduct as set forth above was a breach of that duty. Rocket both mishandled the funds and refused to account for the funds.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Rocket Mortgage, LLC for:

i. Compensatory damages;

ii. Punitive damages;

iii. Costs of suit;

iv. Such other or further relief as the Court deems proper.

**COUNT III – BREACH OF CONTRACT**

34. Plaintiff incorporates paragraphs 1-23.

35. The mortgage that Rocket was servicing (Appendix A, paragraphs 2 and 3) required Rocket to disburse the funds in Plaintiff's escrow account to pay the taxes and other escrow items for which escrow amounts were being collected.

36. Rocket's conduct as set forth above was a breach of that duty.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Rocket Mortgage, LLC for:

i. Compensatory damages;

ii. Costs of suit;

iii. Such other or further relief as the Court deems proper.

**COUNT IV – ILLINOIS CONSUMER FRAUD ACT**

37. Plaintiff incorporates paragraphs 1-23 and 30.

38. Rocket engaged in unfair and deceptive acts and practices, in violation of 815 ILCS 505/2, by:

a. Collecting money from Plaintiff to pay taxes and other items via an escrow account;

b. Not paying the taxes and escrow items;

c. Refusing to account for what it did with Plaintiff's money.

d. Refusing or failing to comply with RESPA.

39. Rocket's conduct was contrary to public policy at set forth in RESPA.

40. Rocket's conduct was oppressive, in that Plaintiff could not cease dealing with RESPA other than by refinancing and incurring financial costs.

41. Rocket's conduct caused financial harm.

42. Rocket engaged in such conduct in the course of trade and commerce in financial services.

43. Rocket has engaged in a pattern of similar misconduct.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Rocket Mortgage, LLC for:

i. Compensatory damages;

ii. Punitive damages;

iii. Attorney's fees, litigation expenses and costs of suit;

iv. Such other or further relief as the Court deems proper.

**COUNT V – RESTITUTION**

44. Plaintiff incorporates paragraphs 1-23.

45. Rocket Mortgage, LLC obtained money from Plaintiff to pay her taxes, but did not use it for that purpose, forcing Plaintiff to pay the taxes. In equity and good conscience, Rocket Mortgage, LLC should be required to reimburse Plaintiff.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Rocket Mortgage for:

i. Appropriate damages;

ii. Costs of suit;

iii. Such other or further relief as the Court deems proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (ARDC 0712094)
Tara L. Goodwin (ARDC 62970473)
Caileen M. Crecco (ARDC 6343265)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603-1841
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com
dedelman@edcombs.com
tgoodwin@edcombs.com
ccrecco@edcombs.com

## JURY DEMAND

Plaintiff demands trial by jury.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

*/s/ Daniel A. Edelman*
Daniel A. Edelman